EL PUEBLO, DEMANDANTE Y APELADO, *v.* PEÑA ET AL., ACUSADOS Y APELANTES.

Apelación procedente de la Corte de Distrito de Humacao en causa por infracción al artículo 407 del Código Penal.

No. 1750.—Resuelto en junio 16, 1922.

INCENDIO MALICIOSO—INTERPRETACIÓN DE LAS PALABRAS "RANCHÓN DE TABACO."—Las palabras "ranchón de tabaco" (*tobacco sheds*) usadas en el artículo 407 del Código Penal se interpretan en el sentido de que significan ranchones para tabaco sin tenerse en cuenta si realmente contienen o no tabaco al ocurrir el incendio.

ID.—EVIDENCIA DE OTROS INCENDIOS—INTENCIÓN—ERROR PERJUDICIAL.—En el

presente caso de incendio malicioso de un ranchón para tabaco la corte infe-
rior admitió prueba de otros incendios meramente para demostrar que se
quemaron otros ranchones en la vecindad la misma noche, pero sin que tal
evidencia probara que los acusados fueran autores de dichos otros incendios.
*Se resolvió:* que no siendo el objeto de la prueba el demostrar que el incen-
dio imputado a los acusados no era accidental sino parte de una serie de
actos indicadora de un propósito o plan común, no era admisible y, como
alegan los acusados, constituyó error perjudicial a éstos.

ID.—PRUEBA DE ANIMOSIDAD ENTRE EL PERJUDICADO Y LOS ACUSADOS.—Prueba de
animosidad entre el perjudicado y los acusados es admisible ya surgiera ésta
de causas políticas o de otra naturaleza.

Los hechos están expresados en la opinión.

Abogados de los apelantes: *Sres. L. Feliú y C. Travecier.*

Abogado del apelado: *Sr. José E. Figueras, Fiscal.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tri-
bunal.

Esta fué una causa por virtud del artículo 407 del Có-
digo Penal, el cual prescribe lo siguiente:

"Artículo 407.— Toda persona que voluntaria y maliciosamente
quemare algún puente de valor de más de cincuenta dollars, o cual-
quier edificio o embarcación que no fuere materia de incendio mali-
cioso o tabaco, o ranchón de tabaco, o cualquiera plantación creciente
o por cosechar, pasto o árbol o cualquiera cerca, no perteneciente a
dicha persona, incurrirá en pena de presidio por uno a diez años."

Se imputó a los acusados el hecho de haber pegado fuego
y quemado, con intención de destruirlos, dos ranchos para
tabaco pertenecientes al querellante.

El primer fundamento de error fué que las palabras del
código significaban un rancho que contenía el tabaco y no
para tabaco, pero creemos que las palabras tanto en caste-
llano como en inglés son susceptibles de ser usadas en el
sentido de ranchos para tabaco, haya o no realmente tabaco
en ellos.

El segundo señalamiento de error es el más importante
en esta apelación y envuelve la cuestión de si debió haberse
permitido declarar a un testigo acerca de la existencia de
otros fuegos ocurridos en la misma noche en que se quema-
ron los ranchos de tabaco en cuestión.

En la obra Wigmore sobre Evidencia, párrafo 300 y siguientes, se discute la materia de otros delitos o actos semejantes como prueba de conocimiento, propósito o intención. Cuando la relación de un acusado con la ejecución del acto en cuestión queda establecida terminantemente, la prueba de otros actos para demostrar su intención puede ser admitida. Asimismo, si no se conoce el origen pero existe una serie de actos o delitos todos los cuales indican un propósito o plan común, entonces puede también presentarse prueba de estos otros actos. En el párrafo 304, Wigmore sobre Evidencia, después de citar casos, expresa lo siguiente:

"Se verá que la diferencia entre exigir *semejanza,* por actos que no demuestran una intención inocente, y *exigir circunstancias comunes que indican un propósito común,* por actos que muestran una intención, constituye una diferencia en grado más bien que en clase."

Lo que expresa el autor en otras partes de este capítulo es que cuando el acusado no ha sido conectado con el delito, todos los demás actos pueden presentarse como parte de la teoría de la culpabilidad mediante prueba circunstancial, y desde luego que cuando un acusado ha de ser conectado con el delito la prueba debe ser fuerte como en todos los casos de prueba circunstancial. Sin embargo, cuando el acusado ya ha sido conectado con el acto, la prueba de la intención no tiene que ser tan fuerte. Esto es particularmente así cuando el gobierno trata de probar que el fuego no fué la consecuencia de un accidente, cuestión que se discute en el párrafo 303 de Wigmore, *supra.* Dice Wigmore: "Es posible negar el accidente o inadvertencia e inferir una deliberada intención humana sin formar alguna conclusión en cuanto a la personalidad del autor." En otras palabras, la multiplicidad de accidentes que un solo individuo sufra negaría la idea de accidente. Una cita del caso *State* v. *Huffman,* 73 S. E. 294, puede aclarar algo esta cuestión.

"Generalmente cuando ha sido admitida prueba de delitos ante-

riores con cualquiera de los fines indicados ellos han sido imputados en cierto modo al acusado, pero según entendemos las autoridades, este no es un requisito previo para su admisión, si el objeto es limitarla a probar que el fuego en particular en cuestión no fué casual. Wigmore dice: "Además, el principio de una intención desconocida se reconoce que tiene aquí de vez en cuando una utilidad peculiar; por ejemplo, la repetición de un fuego semejante puede tender decisivamente a negar una intención inocente, aún cuando no aparezca quién es el autor de los otros fuegos; entonces habiendo negado la acusación la intención inocente en el presente fuego por cualquiera que lo haya pegado, puede probarse que el acusado lo ocasionó.' La dificultad que tenemos en el caso presente ha sido si la prueba de tantos fuegos y otros daños que datan de hace tantos años y que no guardan relación en cuanto a fecha, circunstancias y naturaleza, como fueron éstos, era prueba admisible, por estar comprendida en las reglas y principios de las decisiones y autores citados. Hemos llegado a la conclusión, sin embargo, que tomada en relación con la prueba de la animosidad del prisionero hacia Reynolds, la cual empieza hacia la misma fecha, el número extraordinario de estos delitos, su naturaleza peculiar, y la fecha y circunstancias en que ocurrieron, y considerada en relación con todas las demás pruebas del caso, la prueba fué admisible, por lo menos en cuanto a la naturaleza del carácter incendiario del fuego en cuestión. Que Reynolds, un vecino cercano del acusado debió haber sufrido tantas y tan extraordinarias pérdidas en su propiedad por fuego y otras causas, que empiezan casi al mismo tiempo que sus disgustos con el acusado, es muy significativo y constituye un hecho complejo que no solamente tiene relación con el acto de pegar fuego, sino que también, a falta de cualquier prueba de un móvil u oportunidad por parte de alguna otra persona, señala decididamente al prisionero como la persona culpable. Por estas razones no estamos dispuestos a sostener el señalamiento de error.''

En el caso ante nos, sin embargo, hubo meramente prueba de otros fuegos ocurridos en la misma noche y muy poco más. Este "muy poco más" fué que los acusados y el querellante pertenecían a partidos contrarios y que los acusados actuaron en propaganda de su partido y que todos estos fuegos ocurrieron precisamente antes de las elecciones de 1920. Si el gobierno hubiera continuado demostrando que

los otros ranchos quemados también pertenecían a dueños del mismo partido que el querellante y que existía gran animosidad entre los dos partidos, hubiéramos estado más convencidos de que la prueba era admisible pero según fué presentada se cometió error.

Surge entonces la cuestión siguiente: ¿Fué perjudicial el error? El querellante y varios miembros de su familia declararon haber visto realmente a los acusados o algunos de ellos pegando fuego a los ranchos, estando los otros acusados presentes en el sitio de los sucesos. Fué llamado otro testigo quien declaró que en las noches del fuego había visto a los acusados en ciertos sitios. En la página 27 de los autos aparece que después de relatar este hecho la defensa no hizo ninguna pregunta, pero la corte hizo varias al testigo a las cuales dicho testigo contestó que había visto a los acusados una noche del mes de junio en que ocurrieron unos fuegos en varios ranchos de tabaco en el barrio de Lirios y Ceiba Sur de Juncos. Después de terminar la corte el interrogatorio del testigo preguntó el fiscal: "¿Ese sitio donde usted los vió a ellos fué muy distante de donde ocurrió el fuego?" El testigo contestó: "Yo debo hacer una aclaración. Hubo varios fuegos esa noche en distintos ranchos, y en algunos de ellos había más distancia que en otros." La defensa dijo: "Me opongo a que el testigo hable de otros ranchos, porque han podido haber cincuenta mil fuegos en Juncos y eso no tendría que ver nada con los acusados." El fiscal sostuvo que el hecho de que se quemaran propiedades en la vecindad tendía a probar que el acto cometido por los acusados fué malicioso e intencional. La corte, después de una pequeña argumentación, admitió la pregunta meramente para demostrarse que se quemaron otros ranchos pero sin demostrarse que los acusados tuvieron alguna intervención con los otros fuegos, y entonces se permitió al testigo decir, al parecer sin más objeción, que en los otros ranchos en que hubo

fuego aquella misma noche fueron en propiedades pertene-
cientes a Juan Dávila y Juan Rivera de Juncos.

Aunque el juez que firma esta opinión y el Juez Aso-
ciado Sr. Aldrey tienen dudas la mayoría del tribunal está
convencida de que los acusados fueron perjudicados con la
presentación de esta prueba, y los miembros de la minoría
están dispuestos a conceder a los apelantes el beneficio de
la duda.

Otro fundamento de error fué que la corte permitió la
prueba de la diferencia de afiliación política entre el que-
rellante y los acusados, pero en esto no vemos error ni pre-
juicio. En realidad de verdad la corte no permitiría al tes-
tigo decir cuáles eran las diferencias entre los partidos polí-
ticos o en sus tendencias, actuación que fué favorable si acaso
a los acusados. No vemos que pueda formularse objeción
alguna a que se pruebe la animosidad entre el querellante
y los acusados, ya que surja ésta de alguna causa política
o de otra naturaleza.

Debe revocarse la sentencia apelada y devolverse la causa
a la corte inferior para la celebración de un nuevo juicio.

> *Revocada la sentencia apelada y ordenado un*
> *nuevo juicio.*

Jueces concurrentes: Sres. Presidente del Toro y Aso-
ciados Aldrey, Hutchison y Franco Soto.